UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: BEACON ASSOCIATES LITIGATION | 09 Civ. 777 (LBS) (AJP) |
| SOLIS,<br><br>                    Plaintiff,<br><br>         v.<br><br>BEACON ASSOCIATES MANAGEMENT CORP. et al.,<br><br>                    Defendants. | 10 Civ. 8000 (LBS) (AJP)<br><br>**MEMORANDUM & ORDER** |

SAND, J.

Before the Court is Plaintiff the Secretary of Labor's Motion to Strike Affirmative Defenses pleaded by the Ivy, Beacon, and Jeanneret Defendants. For the reasons stated herein, the Motion is granted is part and denied in part.

The parties in this case have been referred to Magistrate Judge Andrew Peck for pre-trial matters, including settlement and discovery. The Secretary's Motion to Stay Judge Peck's June 28, 2011 Order Requiring Disclosure of Documents from Other Investigations is also before this Court and will be ruled upon in a separate decision. The facts underlying this dispute are set forth in the Court's Opinion of October 5, 2010 in the related case *In re Beacon Associates Litigation*, 745 F. Supp. 2d 386 (S.D.N.Y. 2010).

**I. Legal Standard**

Under Rule 12(f), a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The standard for striking an affirmative defense is three-pronged: (1) there must be no question of fact that

1

might allow the defense to succeed; (2) there must be no substantial question of law that might allow the defense to succeed; and (3) the plaintiff must be prejudiced by the inclusion of the defense." *Specialty Minerals, Inc. v. Pluess-Staufer AG*, 395 F. Supp. 2d 109, 111 (S.D.N.Y. 2005). "An increase in the time, expense and complexity of a trial may constitute sufficient prejudice to warrant granting a plaintiff's motion to strike." *S.E.C. v. McCaskey*, 56 F. Supp. 2d 323, 326 (S.D.N.Y. 1999).

In assessing the sufficiency of an affirmative defense, the Court "should construe 'the pleadings liberally to give the defendant a full opportunity to support its claims at trial, after full discovery has been made.'" *Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 425 (S.D.N.Y. 2010) (quoting *McCaskey*, 56 F. Supp. 2d at 326). A motion to strike an affirmative defense "is not favored and will not be granted 'unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense.'" *William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1984), *vacated on other grounds*, 478 U.S. 1015 (1986) (quoting *Durham Indus., Inc. v. N. River Ins. Co.*, 482 F. Supp. 910, 913 (S.D.N.Y. 1979)). "[E]ven when the defense presents a purely legal question, the courts are very reluctant to determine disputed or substantial issues of law on a motion to strike; these questions quite properly are viewed as determinable only after discovery and a hearing on the merits." *Id.* (quoting 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1381, at 800–01).

However, "conclusory assertions, absent any supporting factual allegations are insufficient as a matter of law." *Coach v. Kmart*, 756 F. Supp. 2d at 425; *PaineWebber Inc. v. Int'l Mobile Machs. Corp.*, No. 91 Civ. 7353, 1992 WL 75068, at *2 (S.D.N.Y. Mar. 30, 1992) ("[W]hile an answer need not include a detailed statement of the applicable defenses, a defendant

2

must do more than make conclusory allegations."). The existence of "some unknown and hypothetical set of facts that could support these defenses" will not create a question of fact. *Coach v. Kmart*, 756 F. Supp. 2d at 426. The pleadings themselves must provide the plaintiff and the Court with notice as to how the defense applies to the plaintiff's claims. *See Obabueki v. Int'l Bus. Machs. Corp.*, 145 F. Supp. 2d 371, 401 (S.D.N.Y. 2001) (striking defense on ground that pleading the words "unclean hands" without more offered the plaintiff no indication about how the doctrine would bar his claims).

## II. Discussion

The Secretary moves to strike the following affirmative defenses: those claiming that the Secretary lacks constitutional and statutory standing; the Ivy Defendants' defenses claiming that they lacked fraudulent intent; defenses of estoppel, unclean hands, and laches; defenses claiming that the parties Plaintiff purports to represent failed to mitigate losses; defenses claiming reduced liability because of the conduct of others; defenses claiming that damages should be offset for the value of benefits received; the Ivy Defendants' defenses based on lack of assets; and defenses asserting a right to amend the Answers. The Secretary also moves to strike, and the Beacon and Jeanneret Defendants voluntarily withdraw, the defenses of waiver and ratification[1] and the defenses purporting to adopt by reference any applicable defense pleaded by another Defendant.[2]

### a. Constitutional & Statutory Standing

The Secretary moves to strike the affirmative defenses of lack of constitutional and statutory standing as legally insufficient on the grounds that Employee Retirement Income

---

[1] Beacon Answer (5th and 6th Affirmative Defenses); Jeanneret Answer (8th Affirmative Defense).
[2] Beacon Answer (19th Affirmative Defense); Jeanneret Answer (21st Affirmative Defense).

Security Act ("ERISA") explicitly confers standing upon the Secretary of Labor.[3]  Defendants object on the ground that ERISA limits the Secretary's standing to bring suit; she may only seek relief "with respect to a plan," as defined by ERISA, for "actual principal losses," against a "person who is a fiduciary."  29 U.S.C. §§ 1109(a), 1132(a)(2).  Because the plans the Secretary purports to represent are not named in the Complaint, Defendants argue that they do not know if the plans qualify under the statute and if they sustained actual principal losses.  The Ivy Defendants also contest the Secretary's allegation that they qualify as fiduciaries.  Similarly, Defendants argue that they cannot know whether the plans have suffered an "actual or threatened injury" as required by Article III.  *See Fin. Insts. Ret. Fund v. Office of Thrift Supervision*, 964 F.2d 142, 147 (2d Cir. 1992) (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)).  Whatever doubts the Court may have regarding the merits of these defenses, it does not appear that their persistence would prejudice the Secretary, given that the status of the individual plans and their losses will in any event be the subject of discovery.  Accordingly, the Motion to Strike the affirmative defenses based on lack of standing is denied.  If the Secretary would like to move for summary judgment with respect to these defenses, she may do so in due course.

### b. Fraudulent Intent

The Secretary next argues that the Ivy Defendants' affirmative defenses alleging that they lacked fraudulent intent should be stricken as legally insufficient.  *See* Ivy Answer (10th Affirmative Defense); Simon Answer (10th Affirmative Defense); Wohl Answer (10th Affirmative Defense).  The parties apparently agree that fraudulent intent is not an element of the Secretary's claims for fiduciary imprudence or disloyalty under ERISA section 404, 29 U.S.C. §

---

[3] *See* Ivy Answer (16th and 17th Affirmative Defenses); Simon Answer (16th and 17th Affirmative Defenses); Wohl Answer (16th and 17th Affirmative Defenses); Beacon Answer (8th and 17th Affirmative Defenses); Jeanneret Answer (11th Affirmative Defense).

4

1104, and co-fiduciary liability under ERISA section 405, 29 U.S.C. § 1105.  *See LaScala v. Scrufari*, 479 F.3d 213, 219–20 (2d Cir. 2007) (discussing elements of ERISA claims under sections 404 and 405).  The absence of fraudulent intent is, however, relevant to the Ivy Defendants' separately asserted statute of limitations defense, because Plaintiff has alleged "fraud or concealment" under ERISA's statute of limitations provision.  29 U.S.C. § 1113.  While its relevance does not cure its improper pleading as an affirmative defense, its inclusion and treatment as a specific denial is not prejudicial, as it will in no way expand the scope of discovery or complexity of issues at trial.  *See, e.g.*, *In Re Merck & Co., Inc. Vytorin ERISA Litig.*, No. 08 Civ. 1974 (DMC), 2010 WL 2557564, at *4 (D.N.J. June 23, 2010) (because "good faith is not an affirmative defense to a breach of fiduciary duty claim," it "will be treated as a denial of Plaintiffs' claims").  The Secretary's contention that she will be prejudiced by the confusion that will result from its continued inclusion is unpersuasive.  The parties and the Court are adequately equipped to deal with whatever confusion might result from the Ivy Defendants' pleading.

### c. Estoppel, Laches, and Unclean Hands

The Secretary next moves to strike the Beacon and Jeanneret Defendants' affirmative defenses of estoppel, laches, and unclean hands on the grounds that they are legally insufficient.[4]  "To succeed on a defense of equitable estoppel asserted against a private plaintiff, a defendant must prove (1) that the plaintiff made a material misrepresentation, (2) upon which the defendant relied, (3) to his detriment."  *S.E.C. v. McCaskey*, 56 F. Supp. 2d at 326 (citing *Gen. Elec. Capital Corp. v. Armadora, S.A.*, 37 F.3d 41, 45 (2d Cir. 1994)).  However, where a defendant seeks to assert the defense against the government, "estoppel will only be applied upon a

---

[4] Beacon Answer (5th and 6th Affirmative Defenses); Jeanneret Answer (8th Affirmative Defense).

5

showing of 'affirmative misconduct.'" *Rojas-Reyes v. I.N.S.*, 235 F.3d 115, 126 (2d Cir. 2000) (internal quotation marks omitted); *see also Drozd v. I.N.S.*, 155 F.3d 81, 90 (2d Cir. 1998) ("The doctrine of equitable estoppel is not available against the government except in the most serious of circumstances . . . and is applied with the utmost caution and restraint." (quotation marks and citation omitted)).

Likewise, the defenses of laches and unclean hands, if available at all against the government, require that the "misconduct be egregious and the resulting prejudice to the defendant rise to a constitutional level." *S.E.C. v. Rosenfeld*, No. 97 Civ. 1467 (RPP), 1997 WL 400131, at *1–2 (S.D.N.Y. July 16, 1997) (quoting *S.E.C. v. Elecs. Warehouse, Inc.*, 689 F. Supp. 53, 73 (D. Conn. 1988)). These defenses generally "may not be invoked against a government agency which is attempting to enforce a congressional mandate in the public interest."[5] *Id.* (quoting *S.E.C. v. Gulf & W.*, 502 F. Supp. 343, 348 (D.D.C. 1980) (striking defense of unclean hands after defendant voluntarily withdrew laches and estoppel defenses); *see also United States v. Summerlin*, 310 U.S. 414, 416 (1940) ("It is well settled that the United States is not bound by state statutes of limitation or subject to the defense of laches in enforcing its rights."). Significantly, the Supreme Court of the United States has "reversed every finding of estoppel that [it] ha[s] reviewed." *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 419, 422 (1990). And each case cited by Defendants in support of their claim that estoppel, laches, and unclean hands may be pleaded as defenses against the government ultimately concludes that the defenses are unavailable. *See, e.g.*, *S.E.C. v. Elecs. Warehouse*, 689 F. Supp. at 73 (denying motion to supplement pleadings with affirmative defenses of unclean hands and inequitable

---

[5] Defendants' attempt to distinguish this case on the grounds that the Secretary is representing particular plans rather than the public at large is unavailing. *See Dole v. Guido*, No. 89 Civ. 4953 (JFK), 1991 WL 35843, at *5 (S.D.N.Y. Mar. 14, 1991) (striking laches defense in action brought by Secretary of Labor representing funds against fund fiduciaries on ground that "laches is unavailable in actions against the government").

6

conduct because defenses were insufficient as matter of law); *Donovan v. Robbins*, 99 F.R.D. 593, 600–01 (D.C. Ill. 1983) (striking defenses of unclean hands and laches as against Secretary of Labor).

Defendants' case is no stronger than those they have brought to the Court's attention. Defendants plead in conclusory terms that the Secretary's claims are barred by the doctrines of estoppel, laches, and unclean hands; "mere recitation of the legal buzzwords, however, will not suffice." *Saratoga Harness Racing, Inc. v. Veneglia*, No. 94 Civ. 1400, 1997 WL 135946, at *6 (N.D.N.Y. Mar. 18, 1997) (striking defenses of estoppel and laches); *Obabueki*, 145 F. Supp. 2d at 401 ("Pleading the words 'unclean hands' without more . . . is not a sufficient statement of such defense."); *Daiwa Special Asset Corp. v. Desnick*, No. 00 Civ. 3856 (SHS), 2002 WL 1997922, at *12 (S.D.N.Y. Aug. 29, 2002) (striking estoppel, laches, and unclean hands defenses on grounds that "mere pleading of the defense . . . without more is insufficient").

Were the Court to permit Defendants to amend their Answers to include the factual allegations contained in their opposition briefs, Defendants do not allege facts that would support an estoppel, laches, or unclean hands defense. The defenses are based on "the [Department of Labor's] long-standing knowledge of the relevant facts." Jeanneret Opp'n Mot. Strike 13. The Jeanneret Defendants claim that the Department of Labor ("DOL") conducted regulatory investigations that examined their compliance with ERISA from as early as 1993 and investigated various other plans with Madoff-related investments. Because the Secretary made no adverse findings at that time, leading Defendants to believe that the Madoff investment was appropriate, Defendants argue that she should now be estopped from proceeding against them.[6] Assuming the Secretary had access to the same information available to Defendants, and

---

[6] The Beacon Defendants allege that the DOL investigated Madoff-related plans and highlights "DOL's own inaction in the face of [] information" it uncovered. Beacon Opp'n Mot. Strike 5.

7

assuming her failure to act speaks to the appropriateness of Defendants' actions, her failure would nonetheless fall far short of the affirmative misconduct required to plead equitable defenses against the Government.  Defendants have not identified any intentional misrepresentation or other misconduct beyond mere negligence.  *I.N.S. v. Miranda*, 459 U.S. 14, 18 (1982) (stating that negligent conduct is insufficient basis for estoppel claim against government); *Rojas-Reyes v. I.N.S.*, 235 F.3d at 126 (failure to act where Attorney General had discretion was not affirmative misconduct); *S.E.C. v. Culpepper*, 270 F.2d 241, 248 (2d Cir. 1959) (holding that neither failure to act after prior investigation of transaction in question nor "acquiescence" in transaction qualify as affirmative misconduct).  Nor is there any indication in the pleadings that the Secretary unreasonably delayed in bringing this action.  *See Graham v. S.E.C.*, 222 F.3d 994, 1008 n.26 (2d Cir. 2000) ("[T]he SEC's failure to prosecute at an earlier stage does not estop the agency from proceeding once it finally accumulated sufficient evidence to do so."); *Coach v. Kmart*, 756 F. Supp. 2d at 427 (striking laches defense where defendants did not adequately allege delay or prejudice).  Finally, Defendants have not adequately alleged that they detrimentally relied on any such action, let alone that such reliance resulted in prejudice to their case of a constitutional magnitude.  *McCaskey*, 56 F. Supp. 2d at 326–27 (striking estoppel and laches defenses because defendant failed to adequately allege reliance and prejudice "of a constitutional magnitude").[7]

     Moreover, allowing the defenses to remain would prejudice the Secretary "by needlessly lengthening and complicating the discovery process and trial of this matter." *Id*.  Prejudice is particularly clear where, as here, "defendants have already given notice that they will seek to discover the internal workings of the [Secretary's] investigations of [Defendants] to support

---

[7] The Jeanneret Defendants make a similar claim with regard to actions taken, or not taken, by the Securities and Exchange Commission following Madoff-related investigations.  These claims fail for identical reasons.

8

these defenses." *S.E.C. v. KPMG LLP*, No. 03 Civ. 671 (DLC), 2003 WL 21976733, at *3 (S.D.N.Y. Aug. 30, 2003). This will not necessarily foreclose all inquiry into the Secretary's prior knowledge and actions. The availability of such discovery, to the extent that it may be probative of the reasonableness of Defendants' actions or relevant to the statute of limitations, is the subject of a separate motion. However, Defendants will not be permitted to engage in a "fishing expedition" for affirmative wrongdoing without alleging an adequate factual basis for these defenses. *S.E.C. v. Rosenfeld*, 1997 WL 400131, at *2 (prohibiting defendant from using discovery to find evidence to make out estoppel defense). Accordingly, Defendants' equitable estoppel, laches, and unclean hands defenses are hereby stricken.

### d. Mitigation

The Secretary next moves to strike the Ivy Defendants' 25th Affirmative Defense: that "the Plaintiff's claims are barred and/or Ivy is entitled to an offset against any damages award because the parties Plaintiff purports to represent have failed to mitigate their damages." While there is some case law that suggests failure to mitigate would be unavailable as a defense in an ERISA action, the issue is not settled. *Schleibaum v. Kmart Corp*., 153 F.3d 496, 501 (7th Cir. 1998) ("Whether plaintiffs are even required to mitigate their damages in the ERISA context is not a settled matter of law."); *In re State Street Bank & Trust Co. Fixed Income Funds Inv. Litig.*, 772 F. Supp. 2d 519, 540 (S.D.N.Y. 2011) (granting summary judgment as to mitigation defense finding "it would defeat the purposes of ERISA to allow [defendant] to use another fiduciary's actions as a shield against awarding damages to the Plans"). Given the uncertainty in this area of law, the Court will not rule on its validity in the abstract without the benefit of discovery. *See In re Merck & Co., Inc. Vytorin ERISA Litig.*, No. 08 Civ. 1974 (DMC), 2010 WL 2557564, at *3

(D.N.J. June 23, 2010) (finding it improper to make determination as to applicability of mitigation defense prior to discovery).

### e. Reduced Liability Because of the Conduct of Others

The Secretary next moves to strike the affirmative defenses that claim reduced liability because of the conduct of others, including co-fiduciaries and Madoff. The Secretary rightly points out that the affirmative defenses seeking proportional liability according to degree of wrongdoing[8] cannot succeed, as "breaching fiduciaries are jointly and severally liable" under ERISA for all losses they enabled by failing to satisfy their duties. *In re Masters Mates & Pilots Pension Plan & IRAP Litig.*, 957 F.2d 1020, 1023 (2d. Cir. 1992); *Tr. of Local 464A United Food & Commercial Workers Union Pension Fund v. Wachovia Bank, N.A.*, No. Civ. 09-668 (WJM), 2009 WL 4138516, at *3–4 (D.N.J. Nov. 24, 2009) (striking defense that plaintiffs' claims were barred, in whole or in part, by trustees' breaches of fiduciary duties as unavailable in ERISA suit). Similarly, the defenses cannot succeed to the extent that they claim reduced liability based on contributory negligence.[9] *Conway v. Icahn & Co., Inc.*, 16 F.3d 504, 511 (2d Cir. 1994) (award for breach of fiduciary duty cannot be reduced for contributory negligence); *Solutia Inc. v. FMC Corp.*, 456 F. Supp. 2d 429, 452 (S.D.N.Y. 2006) (declining to recognize comparative negligence defense in context of claim for breach of fiduciary duty).

---

[8] *See* Ivy Answer (23rd Affirmative Defense) ("[A]ny award for damages or restitution against it must be reduced, diminished or eliminated in proportion to the wrongful or negligent conduct of people or entities other than Ivy."); Beacon Answer (11th Affirmative Defense) ("Defendants' liability, if any, should be reduced, at least, by an amount proportionate to the amount by which the comparative negligence, or other acts or omissions, of such other persons or entities contributed to the happening of the incident and alleged damages upon which Plaintiff seeks recovery."); Jeanneret Answer (15th Affirmative Defense) (same).

[9] *See* Ivy Answer (24th Affirmative Defense) ("Plaintiff's claims are barred and/or Ivy is entitled to an offset against any damages because the parties Plaintiff purports to represent have sustained were caused, in whole or in part, by their or their agents' own actions, omissions and/or negligence."); Jeanneret Answer (13th Affirmative Defense) ("Plaintiff's claims are barred in whole or in part because of the contribution of or the comparative fault and contributory negligence of Plaintiff and/or those on behalf of whom Plaintiff purports to sue.").

10

Defendants apparently do not dispute that the defenses of comparative liability and contributory negligence are not available to them. Instead they insist that these defenses should be read to state that Defendants did not cause the losses and that the losses were caused by others. Putting aside the textual feasibility of this interpretation,[10] the knowledge and actions attributable to each of the parties involved, including the trustees of the individual funds, are clearly relevant and will be a topic of discovery whether or not the Court were to strike these defenses. Given the lack of prejudice, the Court will not strike the defenses at this time.

### f. Damages Offset for Value of Benefits Received

In their 26th Affirmative Defense, the Ivy Defendants state that "Plaintiff's claims are barred and/or Ivy is entitled to an offset against any damages award with respect to any benefit actually received by the parties Plaintiff purports to represent or others through the services Ivy provided." While "a fiduciary may *not* balance losses attributable to a breach of trust against gains attributable to actions which do not involve a breach of trust," *Cal. Ironworkers Field Pension Trust v. Loomis Sayles & Co.*, 259 F.3d 1036, 1047 (9th Cir. 2001) (citing Restatement (Second) of Trusts § 213, Comment c. (1959)), there may be some instances in which net loss is the appropriate measurement. *See, e.g.*, *id.* ("[A] fiduciary is liable for the total aggregate loss of all breaches of trust and may reduce liability for the net loss of multiple breaches only when such multiple breaches are so related that they do not constitute separate and distinct breaches."); *Haddock v. Nationwide Fin. Servs., Inc.*, 262 F.R.D. 97, 130 (D. Conn. 2009) (considering

---

[10] Defendants' reading contradicts the plain language of the defenses, which seek to reduce "any award for damages or restitution against [Defendants] . . . *in proportion* to the wrongful conduct" of others. Ivy Answer (23rd Affirmative Defense) (emphasis added). In fact, each Defendant separately pleads lack of causation. *See* Ivy Answer (21st Affirmative Defense) ("Ivy states that the parties Plaintiff purports to represent have not sustained any damages that were caused by Ivy."); (22nd Affirmative Defense) ("Ivy states that the damages or losses asserted in the AC were caused by intervening and or superseding events for which Ivy is not legally responsible."); Jeanneret Answer (14th Affirmative Defense) ("Any losses alleged by Plaintiff were not actually or proximately caused by any act, fault, or omission of the Jeanneret Defendants, but were caused by circumstances, entities, or persons for which the Jeanneret Defendants are not responsible and cannot be held liable.").

11

possibility that defendant could "off-set any benefits to the Plans from the disgorgement award"). Without the benefit of further factual development, the Court cannot say that there are no circumstances under which Defendants' defense could succeed. Accordingly, the Court will not strike the defense at this time.

### g. Defense Based on Lack of Assets

The Secretary next seeks to strike the Ivy Defendants' 31st Affirmative Defense that "Plaintiff's claims with respect to prudent management of assets invested with Madoff are barred because there were no such assets as a result of Madoff's actions." The Secretary argues that this attempt to "evade fiduciary liability because their breach was so damaging to the plan that it resulted in the total loss of all plan assets" is "totally at odds with ERISA." Mot. Strike 22. Claiming that the Secretary misreads the defense, the Ivy Defendants argue that the defense alleges that the losses occurred the moment Madoff received the funds. Thus, any claim for mismanagement occurring after Madoff received the funds—for example, a claim that Ivy should have recommended that clients withdraw their assets—cannot succeed because this mismanagement did not cause any additional loss. The availability of this defense depends on a series of facts currently unavailable to the Court and is better determined on the merits following the conclusion of fact discovery. *Budget Dress Corp. v. Int'l Ladies' Garment Workers' Union*, 25 F.R.D. 506, 508 (S.D.N.Y. 1959) ("A motion to strike for insufficiency was never intended to furnish an opportunity for the determination of disputed and substantial questions of law and is not granted if insufficiency of the defense is not clearly apparent or may be better determined in a hearing on the merits." (citations omitted)).

### h. Right to Amend

Finally, the Secretary moves to strike the defense raised by all Defendants reserving the right to assert further defenses as they become apparent.[11]  The Secretary interprets this as reserving "a unilateral right to amend" irrespective of the applicable constraints of Rule 15 of the Federal Rules of Civil Procedure.  Although the Court has discretion to strike such broad assertions, *see e.g.*, *Cnty. Vanlines Inc. v. Experian Info. Solutions, Inc.*, 205 F.R.D. 148, 157–58 (S.D.N.Y. 2002) (striking defense reserving "right to assert additional affirmative defenses at such time and to such extent, as warranted by discovery and factual developments in this case"), Defendants recognize the constraints imposed by Rule 15 and "do not purport to take upon themselves any greater rights than those provided under the Federal Rules."  Ivy Opp'n Mot. Strike 22 n.15 (reserving rights "within the scope of their right to amend their pleadings subject to Federal Rule of Civil Procedure 15"); Jeanneret Opp'n Mot. Strike 18 (incorporating section of Ivy's opposition briefing).  Accordingly, the Secretary is not prejudiced by the persistence of these defenses.

---

[11] The Ivy Defendants assert that they "reserve[] the right to amend this answer to assert any additional affirmative defenses when and if, in the course of its investigation, discovery or preparation for trial, it becomes appropriate to assert such affirmative defenses."  Ivy Answer 32; Simon Answer 32; Wohl Answer 32.  The Beacon and Jeanneret Defendants similarly "reserve the right to assert additional defenses that might be discovered during the course of this litigation."  Beacon Answer (18th Affirmative Defense); Jeanneret Answer (22nd Affirmative Defense).

## III. Conclusion

For the reasons set forth above, the Motion to Strike is granted with respect to the Beacon Defendants' 5th and 6th Affirmative Defenses and the Jeanneret Defendants' 8th Affirmative Defense. The Motion is denied with respect to the other affirmative defenses pleaded by the Defendants.

SO ORDERED.

Dated: August 10, 2011
New York, NY

_____
U.S.D.J.